## United States District Court, District of Nebraska

| | |
|---|---|
| **Abbie Freudenburg;**<br>**Plaintiff,** | **Case No.**    4:25-cv-3184 |
| **v.** | **Complaint**<br>**(42 USC §1983)** |
| **Joseph Smith, Madison County**<br>**Attorney, in his individual**<br>**capacity; and Kelli Dickes,**<br>**former Madison City Clerk, in**<br>**her individual capacity;** | |
| **Defendants.** | |

### Introduction

1.      In a small central Nebraska town, Abbie Freudenburg was forced by Defendants Joseph Smith and Kelli Dickes to choose between exercising her rights under the First Amendment and facing criminal prosecution.[1]

2.      By letter, Freudenburg had presented to Madison city officials several formal complaints regarding Dickes's performance of her duties as

---

[1] "The *First Amendment* prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 25 (2006).

1

City Clerk. She had sent one formal complaint to the Nebraska Attorney General and had prepared a second.

3.      When Dickes and Smith, the Madison County Attorney, became aware of Freudenburg's intention to send the second complaint, they conspired between themselves and with others to arrange Smith's appearance before the Madison City Council where he would publicly threaten Freudenburg, albeit implicitly, with criminal prosecution if she mailed the complaints.

4.      Freudenburg sues to vindicate her rights pursuant to 42 U.S.C. §1983.

## Parties and Jurisdiction

5.      Abbie Freudenburg is a resident of Battle Creek, Madison County, Nebraska.

6.      Joseph Smith is, and at all times relevant was, the Madison County Attorney and acting under color of law. Smith is sued in his individual capacity.

7.      Kelli Dickes was at all times relevant the Madison, Nebraska, City Clerk. She acted under color of law as the city clerk. She is sued in her individual capacity.

8.    All material events alleged herein occurred in Madison County, Nebraska.

9.    This court exercises jurisdiction pursuant to 28 U.S.C. §1331.

**Facts**

10.    Freudenburg's father, Jim Lewis, had acted as the City's Utility Superintendent for 44 years, had no criminal record, had never been reprimanded regarding performance of his duties, and was married to a long-time local schoolteacher.

11.    In February 2022, Freudenburg's brother-in-law, Robert Fite, filed for Mayor for the City of Madison. All events alleged in support of Freudenburg's claims followed this event.

12.    In September, 2022, City officials began investigating whether Lewis was working on a home he was building when being paid to perform his duties as superintendent. The investigation was initiated by Dickes and Madison city council member Paul Kellen.

13.    On or about November 2, 2022, Dickes and Kellen orchestrated a special meeting conducted the following day regarding the investigation by falsely telling councilmember Rob Fite and others, by

email sent by Dickes, that the meeting was "agreed upon" by other councilmembers and the City Attorney when, in fact, that was not true.

14.     On November 10, 2022, Mayor Al Brandl, a close friend of Defendant Smith, personally served Lewis written notice the City was contemplating removing him from his appointed position as superintendent based upon twelve asserted violations of the City's Personnel Manual, none of which had ever been presented to Lewis previously.

15.     After Lewis learned of the investigation, Freudenburg began attending public meeting of the Madison City Council, making requests for public records, and reviewing the minutes prepared by Dickes, as City Clerk, of City Council hearings. Freudenburg conducted these activities together and as a team with her sister, Kelsie Smith (no relation Joseph Smith, Defendant).

16.     Through this activity, Freudenburg and Smith developed reason to believe City officials had misappropriated and/or could not account for approximately $660,000.00 of federal funds received under the Cares Act passed in response to the COVID-19 epidemic.

17.     In or about December, 2022 and thereafter, Freudenburg became convinced Madison city officials wanted her father, Jim Lewis, terminated for political reasons and were acting in bad faith.

18.     On January 11, 2023, Kellen asked Brenda Jones, a potential candidate for a vacant position on the city council, if she would be willing to "fire Jim's ass" if she was appointed.

19.     In April, 2023, Kellen submitted his "final report" regarding Lewis's alleged malfeasance to a private law firm that had been retained by the City Council to prepare an employee handbook.

20.     After reviewing the evidence, a lawyer at the firm recommended Lewis serve three days unpaid leave for any malfeasance supported by the evidence presented by Kellen.

21.     Through the process of attending city council hearings, Freudenburg also concluded Dickes was falsifying, or at the very least, intentionally preparing minutes of the council hearings which were incomplete and/or misleading. Among other things, Freudenburg believed Dickes was intentionally singling out Freudenburg in the minutes so as to cause the reports of the local newspaper to present Freudenburg – Rob Fite's sister-in-law -- in an unfavorable light.

22.     Freudenburg also noted that the minutes would not be published in a timely manner, including an occasion when Dickes published the minutes fifteen days after the meeting.

23.     On June 15, 2023, Freudenburg sent a formal letter to new Mayor Rob Fite and the City Attorney suggesting the City had violated the Open Meetings Act. Freudenburg's concern was that during the June 14, 2023 meeting Kellen was discussing in open session events, motions and actions previously taken by the council in executive session. Dickes was aware of the letter.

24.     Freudenburg demanded in her letter that the violation be properly addressed, suggesting she would report it to the Nebraska Attorney General if necessary. She also alleged the City had falsely published information on its website regarding the location of the June 14 meeting.

25.     On June 16, 2023, Kelsie Smith, with the assistance of Freudenburg, sent correspondence to the City Attorney, Mayor Fite, and the City Council alleging "multiple violations of the Nebraska Open Meetings Act, harassment and a breach of confidentiality" involving Kellen and

Dickes. Freudenburg again suggested she would contact the Nebraska

Attorney General if necessary. Dickes was aware of the correspondence.

26.    On July 7, 2023, Kelsie Smith sent a letter to Madison city

officials, which Dickes also received, alleging the City had misappropriated

funds to a private lawyer at the law firm of Cline Williams Wright Johnson

& Oldfather by paying for services of the firm that were not approved by

the city council. Smith alleged the private attorney had been hired with the

council's approval to draft an Employee Handbook, not investigate alleged

malfeasance of a superintendent.

27.    On July 10, 2023, Kellen drove by Lewis's home and falsely

accused him of using the City's equipment for personal purposes.

28.    At a meeting of the City Council the evening July 12, 2023,

Freudenburg appeared and raised concerns to the Council regarding several

violations of the Open Meetings Act, breach of confidentiality,

"harassment" toward Jim Lewis by Councilmember Paul Kellen, and other

concerns with the conduct of City officials.

29.    Dickes was present at the open meeting.

30.    During the ensuing discussion, Councilmember Rick

Schommer made a motion to remove Kellen from his position as

councilmember and Freudenburg asked that he be "properly penalized" if a violation of occurred.  Freudenburg stated that, if Kellen is not punished satisfactorily, she would refer it [to the Attorney General].

31.    In response to Schommer and Freudenburg, and while still in open hearing of the council, the City Attorney noted that the council does not have jurisdiction to penalize its own members and suggested that Freudenburg address her concerns to the State Attorney General or County Attorney.

32.    The City Attorney also admitted a violation of the Open Meeting Act during a previous council meeting. The violation concerned Jim Lewis.

33.    On July 13, 2023, Kelsie Smith corresponded with the City Attorney regarding the perceived violations of the Open Meetings Act by Kellen, perceived violations of HIPAA by Kellen, and harassment of Lewis by Kellen.

34.    On July 20, 2023, Freudenburg addressed with the mayor her concern Dickes's minutes of the July 12 meeting falsely stated that Freudenburg asked that Kellen "be punished" without acknowledging Freudenburg's request was conditioned on further inquiry determining

Kellen, in fact, committed misconduct. She asked that the minutes be corrected.

35.     On July 28, 2023, Freudenburg again inquired of the mayor whether the minutes would be corrected. The mayor promised to, and did, address the concern with Dickes and the City Attorney.

36.     On August 3, 2023, Smith filed felony criminal charges against Lewis regarding the same alleged conduct Kellen and Dickes presented to the City's privately retained lawyer for review, resulting in a recommendation of three days unpaid leave.

37.     On August 26, 2023, Freudenburg drafted and mailed a letter to the Attorney General alleging misconduct by Kellen and Dickes. She sent a copy of the letter to Mayor Fite and the City Attorney.

38.     On August 28, 2023, the City Attorney attached a copy of Freudenburg's letter to an email sent to Dickes.

39.     After receiving the email, Dickes notified Kellen, but no other council members, of Freudenburg's complaint.

40.     Even after sending the complaint to the Attorney General, Freudenburg and her sister continued to direct concerns to the City Attorney that Dickes was falsifying public records. As to the August 9,

2023 meeting, Freudenburg alleged in a letter sent to the State
Ombudsman's office on August 10, 2025 that the failure by Dickes to post
minutes from the meeting was a "violation of state law." She renewed the
complaint to the City Attorney on August 29, 2023.

41.     Upon doing so, Freudenburg and her sister suggested the
issues regarding Dickes's performance of her duties could be discussed at
an upcoming special city council hearing scheduled for the following day.

42.     Also on August 29, 2023, Kelsie Smith sent an email
inquiring of the private attorney hired by the City whether she had an
ongoing contract with the City. Smith referred to the 2020 contract which
limited the attorney's scope to completion of an employee handbook.

43.     One of the emails sent to the City Attorney and Mayor Fite
attached a draft of a second letter Freudenburg intended to send to the
Attorney General alleging Dickes was falsifying minutes of city council
meetings.

44.     During the morning of August 30, 2023, Dickes forwarded to
Joseph Smith's office a new email from Kelsie Smith, referring to it as:

**"Another attack on me from the Lewis family. Thank you."**

45. When the City proceeded with the special meeting, Joseph Smith appeared, stood at the lectern, and was referred to or identified as the Madison County Attorney.

46. Smith appeared at the special meeting anticipating that Freudenburg and/or Kelsie Smith would be present or otherwise become aware of his appearance and the content of his presentation.

47. Smith knew if Freudenburg and/or Smith were not present, the local newspaper, the Norfolk Daily News, would report events occurring at the meeting.

48. At the meeting, Smith made comments making clear he intended to use his authority as Madison County Attorney to protect city employees. Smith expressed disapproval of being "mean" to people by sending "threatening letters," and threatened prosecution of those sending the letters.

49. In contrast to her previous conduct, Dickes published minutes almost immediately.

50. The minutes noted that Smith met with the Council regarding the Jim Lewis case (without referring to Lewis by name). In the following sentence, the minutes provided:

There has been a *complaint made to the Attorney General's office*. What the County Attorney would like to see happen is that *all the side issues concerning this case needs to stop*. Smith would like to work with everyone, together, to make sure that everyone who is a witness in this case does not feel like they are being put pressure on or being retaliated against. *Kellen asked if there will be any repercussions to anyone who continues the intimidation and retaliation*. . . . Smith said he would like the council to move on and he will finish it, but in the meantime, all employees need to know this is in someone else's hands and it does no good to be mean to people or send letters. At this point the County Attorney is capable of finishing the job, but at some point he has to act on certain things, like threatening letters for example, which is more serious.

(emphasis added).

51.    Smith was referring to the letters sent by Abbie Freudenburg and Kelsie Smith.

52.    None of the letters sent by Freudenburg or Smith or threatening or intimidating. Copies of letters at issue are attached as **Exhibit A.**

53.    None of the letters sent by Freudenburg or Smith referred to anyone's role or potential role as a witness in the felony criminal case filed by Smith against Jim Lewis.

54.    By taking action, Smith was referring to filing a criminal complaint against Freudenburg if she continued filing complaints against Dickes.

55.    There existed no probable cause, or basis to anticipate the possible existence of probable cause, for criminal charges based upon Freudenburg's protected speech, which had nothing whatever to do with any testimony Dickes might provide against Jim Lewis.

56.    A reporter from the Norfolk Daily News, Jon Humphries, was present at the meeting. On August 31, 2023, the newspaper published Humphries' report of the meeting under a headline reading: *Smith addresses Madison council about witness tampering allegation in ongoing criminal case.* A true and accurate copy of the article, as published on the internet, is attached and marked **Exhibit B**.

57.    The body of the Humpries story contained the following statement: "[Smith] explained that his desire was to help the city through this situation, but if there were more reports of witness tampering by any individuals, there is the possibility of legal action against those responsible."

58.    At the time Smith appeared at the hearing, he had already charged Lewis with a criminal offense.

59.    At the time Smith appeared at the hearing, the investigation of Lewis had been completed by both Kellen and the office of the Nebraska State Auditor.

60.    At the time Smith appeared at the hearing, he was not representing the City or any current or prior city employees.

61.    At the time Smith appeared at the hearing, no complaints had been made by Freudenburg, or by anyone, against any Madison County employee regarding the Jim Lewis matter.

62.    Smith had not been asked to appear at the hearing by the Madison County Board or any Madison County official.

63.    Smith had been asked to appear at the hearing by Kellen.

64.    Smith had been asked to appear at the hearing by Dickes.

65.    On August 31, 2023, Freudenburg read Humphries' report of Smith's comments in the local paper. She then sent an email to Mayor Rob Fite and the City Attorney informing the two she "was able to prevent my second letter to the Attorney General from being mailed out" and that she

"pulled the letter before it was sent out in the mail" after reading

Humphries' story.

66.     The City Attorney responded with an email to Freudenburg

thanking her for the information. The City Attorney blind copied the email

to Dickes, who absent direction to do so from the Mayor or City Attorney,

forwarded it to Smith's administrative assistant with a message reading:

> **Here is the latest update. Maybe I was wrong and Joe's warning did work. 😊.**

A copy of the email correspondence is attached at Exhibit C.

67.     Smith's administrative assistant responded, **"Love to see**

**this! Thank you for all the updates!"**

68.     On November 13, 2024, Freudenburg sent a public records

request specifically requesting that Smith provide:

> All communication between you or any member of your office and Mayor Al Brandl, Lori Kellen, Former City Clerk Kelli Dickes Councilman Paul Kellen, Michael Brogan, or other members of the Madison City Council referring to Abbie Freudenburg, Kelsie Smith or your appearance before the Madison City Council on August 30, 2023. Time frame: Between May 1, 2023 and the present.

69.     Though in possession of them, Smith did not send the email

communications related to his "warning" working.

70.     Instead, Smith responded with a letter over his signature and records that were in no way responsive to the request. A copy of the response is attached and marked **Exhibit D**.

### First Cause of Action -Chilled Speech and First Amendment Retaliation
### (Smith)

71.     Freudenburg incorporates each of the foregoing allegations in support of this cause of action.

72.     By appearing at council hearings, and by initiating and preparing complaints regarding Dickes's performance of her duties as city clerk, Freudenburg engaged in constitutionally protected activity.

73.     Appearing before the city council to threaten Freudenburg for initiating complaints about Dickes was not within Smith's core duties as Madison County Attorney.[2]

74.     Smith's threats were substantially motivated by and against Freudenburg's exercise of her First Amendment activity.

---

[2] See *Neb Rev Stat* §23-1201

75.     Smith's threats constituted an adverse action against Freudenburg that would chill a person of ordinary firmness from continuing to engage in her constitutionally protected activity.

### Second Cause of Action – Civil Conspiracy
### (Smith and Dickes)

76.     Freudenburg incorporates each of the foregoing allegations in support of this cause of action.

77.     Smith and Dickes agreed and confederated with one another to use and employ Smith's status as County Attorney to unlawfully dissuade Freudenburg from advancing her complaints against Dickes and/or other city officials.

78.     By appearing in front of the city council, Smith committed an overt act in furtherance of the conspiracy injuring Freudenburg and depriving her of a constitutional right.

79.     As a result of Smith and Dickes' actions, Freudenburg has suffered personal humiliation, damage to her reputation, mental anguish and suffering.

80.    The conspiracy and acts in its furtherance did, in fact,
dissuade Freudenburg from exercising her rights under the First
Amendment.

### Relief

Abbie Freudenburg, Plaintiff, prays the Court enter judgment in her
favor and against Defendants, and each of them, awarding compensatory
damages that will fairly compensate her for the damages incurred, as well
as attorneys fees and costs.

### Request for Jury Trial

Plaintiff requests trial by jury of all claims alleged herein.

ABBIE FREUDENBURG,
Plaintiff

By: /s/ *Adam J. Sipple,* #20557
SIPPLE LAW
12020 Shamrock Plaza
Suite 200
Omaha, NE 68154
402.778-5055
adam@sipple.law
Attorney for Plaintiff

Nebraska Attorney General Office:

This letter is to file a complaint against the City of Madison City Council, and more specifically the City of Madison City Clerk.

As stated in my previous letter:

*(On August 9, 2023, I attended the City Council meeting where I publicly spoke about my misquoted statement. I expressed my complaint in being inaccurately quoted with no public recording available for her to reference. The council heard my request but the clerk is still refusing to make any changes.*

*As of August 25, 2023, the meeting minutes from the City of Madison council meeting on August 9, 2023 have not been published. This is 10 full business days after the meeting occurred, which is also a violation.)*

As of August 30, 2023, the meeting minutes from the council meeting on August 9, 2023 are now published on their official website. The clerk is again referencing a statement I made at this meeting but neglecting to include a statement by another audience member made directly following mine. She is also stating that she verified my previous quote. This is not possible – the City of Madison does not record their council meetings, thus there is no public record available for her (or anyone, for that matter) to verify this information.

I, personally, have a recording of the excerpt from the August 9th meeting. Following my statement and harsh rebuttal by the city clerk, a fellow audience member addressed her concerns with the clerk's response and overall behavior. Curiously, that statement wasn't mentioned in the minutes.

The city clerk is choosing to target myself and my statements, falsely portraying her subjective take on the meeting and rebutting all questions by falsely claiming verification of the information.

I, again, believe the City of Madison and their City Clerk have knowingly falsified meeting minutes on public record.


Kind regards,


Abbie Freudenburg                                    **EXHIBIT A-1**

Nebraska Attorney General Office:

This letter is to file a complaint against the City of Madison City Council, and more specifically the City of Madison City Clerk.

On July 12th, 2023, I attended the City Council meeting where I addressed a complaint against a potential Open Meetings Act Violation. I was allowed to make a public comment about my complaint. However, the City Clerk has my name and a direct quote by myself in her minutes from that meeting. I did not say the statement that she published. I sent an email the Mayor of Madison, Rob Fite requesting my quote be removed from the public record. He responded and let me know he addressed the City Clerk about removing my quote. It is my understanding that she was told to change the minutes to accurately reflect the meeting and not her subjective view, but refused to remove my quote. She does not have a public recording of the meeting to accurately verify verbatim what was said.
She had initially falsified the meeting minutes by including a State Statute that was not read or even addressed at the meeting. This was removed from the initial published minutes and a revised version is now available. If necessary, I have screenshot evidence of her first publication and the current, revised publication that still includes a statement by my name that I did not make.

On August 9, 2023, I attended the City Council meeting where I publicly spoke about my misquoted statement. I expressed my complaint in being inaccurately quoted with no public recording available for her to reference. The council heard my request but the clerk is still refusing to make any changes.

As of August 25, 2023, the meeting minutes from the City of Madison council meeting on August 9, 2023 have not been published. This is 10 full business days after the meeting occurred, which is also a violation.


I believe the City of Madison and their City Clerk have falsified meeting minutes on public record.


Kind regards,


Abbie Freudenburg

**EXHIBIT A-2**

https://norfolkdailynews.com/select/news/smith-addresses-madison-council-about-witness-tampering-allegations-in-ongoing-criminal-case/article_6cd3d95c-4810-11ee-9711-97e5bc33c663.html

# Smith addresses Madison council about witness tampering allegations in ongoing criminal case

By JON HUMPHRIES
jhumphries@norfolkdailynews.com
Aug 31, 2023



Madison city attorney Mike Brogan talks with county attorney Joe Smith during Wednesday night's special city council session in Madison. Next to Brogan sat the empty seat of city Utilities superintendent James Lewis, accused of theft and misappropriation of city resources.

JON HUMPHRIES/DAILY NEWS

MADISON — The Madison City Council convened on Wednesday evening in a special session to discuss the ongoing criminal case against utilities superintendent James Lewis and his alleged misappropriation of city resources.

Per an official report issued by state auditor Mike Foley in May, Lewis is accused of using city equipment, personnel and vehicles toward the completion of his personal home, among other charges. The report also alleged that Lewis conducted many of these illegal activities while on

EXHIBIT B

city time, when he was said to be working.

On Wednesday, county attorney Joe Smith addressed council members about the case and ramifications of witness tampering or intimidation, which he says is likely to have occurred.

"One of the charges is a tampering charge," Smith said. "As you recall, those of you who have seen the audit, there were some allegations that witnesses were told what to say and not to say; not by y'all, but by somebody else."

The charges against Lewis are felony charges for theft in excess of $5,000. Smith said law enforcement officials were made aware of the tampering charges based on letters that had been sent to the attorney general's office.

"Many of the people here are witnesses … most of your office staff is," Smith said.

He added that while he understood that cases like this were difficult because of Lewis' personal history with the city, attempts to influence witnesses one way or the other needed to stop.

"What I would like to see happen … is all of the side issues in this case stop. I've got lots of cases. This is not a complicated case," Smith said. "We need to put feelings and relationships aside."

Per Smith, many witnesses had been pressured as to their testimony on the case and some even feared retaliation from the city. He explained that his desire was to help the city through this situation, but if there were more reports of witness tampering by any individuals, there is the possibility of legal action against those responsible.

Madison city attorney Mike Brogan thanked Smith for coming to address the council.

"I appreciate your coming to speak to the city, the council, the mayor and the staff. Hopefully it will have a calming effect," Brogan said. "I want you to know the City of Madison is behind law and order, in this county and particularly this city. We stand behind the police."

Brogan said that in a city the size of Madison; however, there were many alliances and friendships, and it was difficult for people there not to support "their person." Brogan said that he had tried to explain to people in the city that Smith's office was just trying to do its job as prosecutor for the county.

Two council members, Paul Kellen and Steve Ainsworth, questioned Smith about the tampering allegation and expressed their desire to move beyond the matter altogether.

"I would like to see us move on from this and take this off the agenda. It's been voted on on our side," Ainsworth said. "... That keeps bringing up more and more. It's moved on to you, so I guess it's out of our hands."

Smith said he wanted to help the city move on as well, but at some point, he would have to act if the tampering allegations did not stop.

In response to the alleged theft, Madison city officials issued a disciplinary memorandum against Lewis and ordered him to repay $390. Foley's report called the city's response to the theft "curious' because less than a month after Lewis made restitution, the city repaid him that same amount, purportedly as reimbursement for equipment rental.

Specific charges against Lewis include misusing city property, falsifying time records, threatening or intimidating city employees, instructing city employees to lie and cover up facts in the case, using city employees and vehicles during working hours and using the city's charge account at Menards and then cashing in on rebates personally.

Neither Foley's report nor Smith has confirmed the actual dollar amount of Lewis' alleged theft. The case is now in county court, but Smith said it would be bound over to district court as a felony case.

All city councilmen were present at the meeting, with the exception of Rick Schommer. Lewis also did not attend the meeting. No official action was taken on the matter during the session.

**Ashley Cline**

| | |
|---|---|
| **From:** | Kelli Dickes <Clerk@madison-ne.com> |
| **Sent:** | Thursday, August 31, 2023 12:40 PM |
| **To:** | Ashley Cline |
| **Subject:** | RE: Attorney General |

You are very welcome!

Kelli Dickes
City Clerk
**211 South Lincoln Street**
**Madison, NE 68748**
**402-454-3412**



https://www.madison-ne.com/

**From:** Ashley Cline <acline@madisoncountyne.gov>
**Sent:** Thursday, August 31, 2023 12:31 PM
**To:** Kelli Dickes <Clerk@madison-ne.com>
**Subject:** RE: Attorney General

Love to see this! Thank you for all the updates!

**From:** Kelli Dickes <Clerk@madison-ne.com>
**Sent:** Thursday, August 31, 2023 11:58 AM
**To:** Ashley Cline <acline@madisoncountyne.gov>
**Subject:** FW: Attorney General

Here is the latest update. Maybe I was wrong and Joe's warning did work 😊

Kelli Dickes
City Clerk
**211 South Lincoln Street**
**Madison, NE 68748**
**402-454-3412**



https://www.madison-ne.com/

**From:** Michael T. Brogan <mbrogan@1400law.com>
**Sent:** Thursday, August 31, 2023 11:42 AM
**To:** Colby Freudenburg <ca_freud@yahoo.com>; Rob Fite <fiterob@gmail.com>
**Subject:** Re: Attorney General

Thank you for the new information.

*\* Brogan BCC'd Kelli in on this email*

**EXHIBIT C**

1

Michael T. Brogan
Madison City Attorney
P. O. Box 667
Norfolk, NE 68702

Phone: (402) 371-9688
FAX: (402) 371-2256
fdcpbizdirectory.com/listing/brogan-stafford-pc

**From:** Colby Freudenburg <ca_freud@yahoo.com>
**Date:** Thursday, August 31, 2023 at 11:15 AM
**To:** Rob Fite <fiterob@gmail.com>, Michael T. Brogan <mbrogan@1400law.com>
**Subject:** Fw: Attorney General

This email is to inform you I was able to prevent my second letter to the Attorney General from being mailed out. I pulled the letter before it was sent out in the mail. I read the news article this morning regarding the concerns of tampering within the city council. While I believe this is a separate issue, I will withhold my complaints at this time and not pursue anything further with the Attorney General. My goal in these letters was to protect my own name from being tied to misquoted information in the attempt to make me look bad.
Thank you,
Abbie Freudenburg

----- Forwarded Message -----
**From:** Colby Freudenburg <ca_freud@yahoo.com>
**To:** Michael T. Brogan <mbrogan@1400law.com>; Rob Fite <fiterob@gmail.com>
**Sent:** Thursday, August 31, 2023 at 08:53:30 AM CDT
**Subject:** Attorney General

Mr. Fite and Mr. Brogan:
Yesterday, I mailed off the attached letter to the Nebraska Attorney General after the delayed meeting minutes were finally posted. This email is only to inform you of my complaint(s) against your office.

Abbie Freudenburg

2



JOSEPH W. HURD, DEPUTY
MATTHEW J. KIERNAN, DEPUTY
NATHANIEL T. ECKSTROM, DEPUTY

Madison County Courthouse
1313 N. Main Street, P.O. Box 269
Madison, NE 68748-0269
Phone: (402) 454-3311, Ext. 206
Fax: (402) 454-9956
Email: attorney@madisoncountyne.com

# JOSEPH M. SMITH
# MADISON COUNTY ATTORNEY

November 15, 2024

Adam J. Sipple
Attorney at Law
12020 Shamrock Plaza, #200
Omaha, NE  68154

RE:  Public Records Request.

Dear Mr. Smith,

You recently asked for public records pertaining to an investigation and prosecution of James Lewis who had criminal charged filed against him by this office.  Mr. Lewis was employed by the City of Madison.  You asked for documents that my office may have received from victims and witnesses in that case.

First, the investigation in this case was conducted by Mike Foley's office.  I know that they released that audit so I'm taking the position that I don't need to treat that as a confidential document.  Secondly, as to any records, concerning my appearance at the city council meetings, those records are kept by the city.

With respect to communication between my office and the victims and witnesses, those are not discoverable under State Statute 84-712.05.

Yours very truly,

Joseph M. Smith
Madison County Attorney

<span style="color:red">**EXHIBIT D**</span>