## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

ABBIE FREUDENBURG,

        Plaintiff,

vs.

JOSEPH SMITH, MADISON
COUNTY ATTORNEY, in his
individual capacity; and KELLI
DICKES, FORMER MADISON CITY
CLERK, in her individual capacity;

        Defendants.

4:25-CV-3184

MEMORANDUM AND ORDER

The plaintiff, Abbie Freudenburg, alleges the defendants—Joseph Smith, the Madison County Attorney, and Kelli Dickes, the former Madison City Clerk—conspired to retaliate against her for exercising her federal constitutional rights. The plaintiff alleges that Smith, with Dickes' help, threatened criminal prosecution against her to chill her protected speech. *See* U.S. Const. amend. I. She brings this lawsuit under 42 U.S.C. § 1983 and asserts a claim of civil conspiracy. *See* filing 1 at 16-17. Both defendants have moved to dismiss. Filing 8; filing 12. Both motions will be denied at this early stage.

## I. BACKGROUND

The plaintiff started attending city council meetings in Madison, Nebraska, after her father, Jim Lewis, the city's Utility Superintendent, was accused of misconduct. In September 2022, Dickes and a member of the Madison city council investigated Lewis for "working on a home he was building when being paid to perform his duties as superintendent." Filing 1 at

3. City officials believed Lewis violated various provisions of the city's personnel manual. *See* filing 1 at 4. Smith filed felony charges against Lewis in August 2023. Filing 1 at 9.

The plaintiff "began attending public meeting[s] of the Madison City Council, making requests for public records, and reviewing the minutes prepared by Dickes." Filing 1 at 4. The plaintiff and her sister believed that Dickes was falsifying or inaccurately reporting meeting minutes and public records, particularly involving discussions about Lewis. They wrote to the new mayor and the city attorney several times about these potential violations of the Nebraska Open Meetings Act, Neb. Rev. Stat. § 84-1407 *et seq*. *See* filing 1 at 6. They also reported perceived violations of the Act to the state ombudsman. *See* filing 1 at 10. Sometimes the minutes complained about were corrected, *see* filing 1 at 8, but other times, they were not, *see* filing 1 at 10.

On August 26, 2023, because of alleged continued misconduct by Dickes, the plaintiff sent a letter describing the violations of the Act to the Nebraska Attorney General. Filing 1 at 9; filing 1 at 20. The plaintiff sent a copy of the letter to the mayor and city attorney; the mayor provided a copy to Dickes. Filing 1 at 9. The plaintiff drafted a second letter to the Attorney General involving the same misconduct, and her sister emailed a copy to the mayor and city attorney before it was sent. *See* filing 1 at 10.

The city scheduled a special meeting on August 30, apparently to discuss the ongoing Lewis prosecution. *See* filing 1 at 21. The plaintiff alleges that Dickes asked Smith to appear at the meeting. Filing 1 at 14. The morning of August 30, Dickes forwarded an email from the plaintiff's sister to Smith's office with the message, "Another attack on me from the Lewis family." Filing 1 at 10.

2

Smith spoke at the meeting about the Lewis prosecution. He "made comments making clear he intended to use his authority as Madison County Attorney to protect city employees." Filing 1 at 11. According to the meeting minutes, Smith referenced the complaint made to the Attorney General, though he did not specifically identify the plaintiff. Smith said he "would like to work with everyone, together, to make sure that everyone who is a witness in" the case against Lewis "does not feel like they are being put pressure on or being retaliated against." Smith also said "it does no good to be mean to people or send letters," and "at some point he has to act on certain things, like threatening letters for example." Filing 1 at 12.

The plaintiff alleges that Smith "was referring to filing a criminal complaint against" the plaintiff "if she continued filing complaints against Dickes." Filing 1 at 13. The plaintiff alleges that none of her letters were threatening or intimidating, nor did they involve any witnesses or potential witnesses in the case against Lewis. *See* filing 1 at 11, 12. She alleges that Smith knew she would hear about his comments.

After the plaintiff learned about Smith's comments, she emailed the mayor and city attorney to say she did not send her second letter to the Attorney General. Filing 1 at 14. The city attorney told Dickes and Dickes emailed Smith's administrative assistant with the message, "Maybe I was wrong and Joe [Smith]'s warning did work." The assistant responded, "Love to see this! Thank you for all the updates!" Filing 1 at 15.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

3

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

## III. DISCUSSION

Smith asserts he is entitled to absolute prosecutorial immunity for the alleged conduct. Both defendants argue that the plaintiff has failed to state a claim upon which relief can be granted, because she failed to plead that her constitutional rights were violated, and because she failed to allege specific and particular facts to support a claim for civil conspiracy.

### *Absolute Immunity*

A prosecutor is absolutely immune from suit based on the performance of any prosecutorial functions. *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). Those functions include the initiation and pursuit of criminal prosecution, the presentation of the government's case at trial, and "other conduct that is intimately associated with the judicial process." *Id*.; *see also Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *J.T.H. v. Mo. Dep't of Soc. Servs. Child.'s Div.*, 39 F.4th 489, 492 (8th Cir. 2022).

Absolute immunity is limited. *See J.T.H.*, 39 F.4th at 492. Specifically, the scope of a prosecutor's immunity is determined by "the immunity

historically accorded" at common law when Congress enacted § 1983. *Imbler*, 424 U.S. at 421. Courts employ a "functional approach" to determine whether the conduct at issue resembles conduct "intimately associated with the judicial process." *J.T.H*, 39 F.4th at 492. For example, immunity does not apply if a prosecutor gives legal advice to the police during a criminal investigation, nor does it protect statements to the press. *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citing *Burns v. Reed*, 500 U.S. 478, 496 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993)).

The plaintiff argues that Smith violated her civil rights when he spoke at a city council meeting. Smith argues that his remarks at the city council meeting were meant to "warn anyone, including city officials, that witness tampering was a crime that he had a responsibility to take seriously." Filing 9 at 6. He asserts absolute immunity extends to his "discretion to take steps to discourage witness tampering after he ha[d] received information that witnesses [were] being pressured to change their testimony." Filing 9 at 9.

But there's no historical precedence for Smith's assertion of immunity. Historically, statements by prosecutors out of court receive qualified, not absolute, immunity.[1] *See Buckley*, 509 U.S. at 277. The conduct alleged is more akin to speaking at a press conference, or giving legal advice to police officers, than to the cases on which Smith relies (filing 9 at 8; filing 18 at 2). *Compare id., and Burns*, 500 U.S. at 494 (out-of-court statements), *with Koch v. Grimminger*, 223 N.W.2d 833, 837 (Neb. 1974) (immunity for decision to file a

---

[1] Prosecutors might be entitled to qualified immunity for non-prosecutorial duties. *See Brodnicki*, 75 F.3d at 1266; *J.T.H.*, 39 F.4th at 492. However, Smith has only raised absolute immunity as a basis to dismiss the plaintiff's suit, and the Court declines to consider *sua sponte* whether qualified immunity applies here. *See Story v. Foote*, 782 F.3d 968, 974-75 (8th Cir. 2015) (Bye, J., concurring in part and dissenting in part).

criminal prosecution), *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (same), *and Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir. 1992) (immunity for allegedly coaching witness to give false trial testimony).

Under either a functional or historical approach, Smith is not absolutely immune from suit. Smith's out-of-court statements did not involve initiating or continuing criminal proceedings, they were not otherwise *intimately* intertwined with the judicial process, and Smith has presented no evidence of some historical or common law analog. *See Burns*, 500 U.S. at 492; *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982) (burden of justifying absolute immunity rests on official asserting the claim). Smith is not entitled to absolute prosecutorial immunity for his statements at the city council meeting.

*First Amendment*

The plaintiff claims that Smith and Dickes conspired to deprive her of her First Amendment rights. The plaintiff argues Smith retaliated against her for engaging in protected speech in order to chill her continued First Amendment activity. *See* filing 1 at 16; filing 16 at 4-5. She asserts that Dickes and Smith worked together to prevent the plaintiff from complaining about Dickes.

To state a claim for First Amendment retaliation, a plaintiff must generally allege: (1) she engaged in a protected activity, (2) the defendant took an adverse action that would chill a person of ordinary firmness from continuing in the protected activity, and (3) the retaliatory animus was the but-for cause of the injury. *E.g., Stearns v. Wagner*, 122 F.4th 699, 703 (8th Cir. 2024); *see also Murphy v. Schmitt*, 143 F.4th 914, 918 (8th Cir. 2025).

A retaliatory arrest is an obvious adverse action that supports a claim for First Amendment retaliation. *E.g., Murphy*, 143 F.4th at 918. Threats of arrest or prosecution have similarly been found to chill a person of ordinary

6

firmness from engaging in protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *cf. MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose [her]self to liability before bringing suit to challenge the basis of the threat" (emphasis in original)).

Neither defendant appears to dispute that the plaintiff engaged in protected conduct, nor that a threat of prosecution constitutes an adverse action for a retaliation claim. But, both defendants argue the facts in the complaint don't support an inference that Smith's threat was targeted to, or intended for, the plaintiff. They argue the plaintiff wasn't at the city council meeting when Smith made his comments, and Smith didn't *specifically* refer to the plaintiff or her letters.

The Court isn't persuaded, at this stage. The facts in the complaint, that the Court must accept as true, are that the plaintiff and her sister sent letters, and that Smith threatened prosecution for sending letters. Filing 1 at 12. Smith specifically referred to letters sent to the Attorney General. Filing 1 at 12. The plaintiff plausibly alleges that Smith knew she would hear about his threat. Filing 1 at 11. There is also alleged factual support for an inference, based on Dickes' letter to Smith's office, that Smith intended to "warn" the plaintiff, specifically, against sending letters, despite her First Amendment right to do so. Filing 1 at 15. And, allegedly, Smith's "warning did work," because the plaintiff pulled her letter. Filing 1 at 15. This is sufficient, at this early stage of the proceedings, to satisfy the plaintiff's burden of pleading of a First Amendment retaliation claim.

*Civil Conspiracy*

The plaintiff claims Smith, a state actor, and Dickes, a private citizen, conspired to deprive her of her First Amendment rights. To state a claim for civil conspiracy under § 1983,[2] a plaintiff must allege facts that show (1) the defendants conspired to deprive her of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured her. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 2024). A private party can be liable under § 1983 for conspiring with a state official if she was a "willful participant in the corrupt conspiracy." *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008).

A civil conspiracy claim requires a plaintiff to allege, with particularity and specificity, material facts showing a "meeting of the minds" between the alleged conspirators. *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 860 (8th Cir. 2024). A plaintiff can satisfy this burden by pointing to "at least some facts which would suggest" that the defendants "reached an understanding to violate her rights." *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989) (cleaned up); *Holmes v. Slay*, 895 F.3d 993, 1001 (8th Cir. 2018). Conspiracies are generally proven with circumstantial

---

[2] The plaintiff appears to rest her civil conspiracy claim on state, not federal, law. *See* filing 16 at 15 (citing *Salem Grain Co. v. Consol. Grain and Barge Co.*, 909 N.W.2d 909 (Neb. 2017)). Under Nebraska law, a claim of civil conspiracy "requires the plaintiff to establish that the defendants had an expressed or implied agreement to commit an unlawful or oppressive act that constitutes a tort against the plaintiff." *Salem Grain*, 900 N.W.2d at 923-24. It's unclear how an alleged violation of the plaintiff's federal constitutional rights can state a state-law civil conspiracy claim, but, in any event, the elements of both state and federal civil conspiracy are effectively the same. *Compare id.*, *with Askew*, 191 F.3d at 957. *Cf. Saunders v. Thies*, No. 4:19-cv-191, 2020 WL 10731253, at *20 (S.D. Iowa Sept. 8, 2020).

evidence that supports an inference of an agreement and concerted activity. *See Holmes*, 895 F.3d at 1002; *White*, 519 F.3d at 816.

The defendants argue that Dickes did not email Smith *directly*, defeating any inference that Dickes and Smith had any meeting of the minds about the plaintiff. They also argue that in one of the emails alleged between the parties, Dickes only referenced the plaintiff's sister, not the plaintiff herself. And, they argue the complaint's "conclusory assertions" fail to state a claim.

But federal law does not require a plaintiff to allege a smoking gun. It's unlikely (though not impossible) that two people would expressly say they desired and intended to work together to violate someone's civil rights, in writing or otherwise. To require a plaintiff to produce such a communication, at the pleading stage or otherwise, would be an impossible burden. Rather, it's sufficient for a plaintiff to point to "at least some facts" that "suggest" such an agreement. *Holmes*, 895 F.3d at 1001. The plaintiff, at this early stage, has done so.

The plaintiff alleged that Dickes asked Smith to appear at the August 2023 city council meeting. *See* filing 1 at 14. She also alleged specific communications between Dickes and Smith's office showing an ongoing relationship. Filing 1 at 10, 15; *see Holmes*, 895 F.3d at 1002 (evidence of pre-existing working relationship supports inference of meeting of the minds). Most importantly, the plaintiff alleged that Dickes sent an email to Smith's office that said, "Maybe I was wrong and [Smith's] warning did work." Filing 1 at 15. This supports an inference that Dickes and Smith may have communicated, in some way, about how to scare the plaintiff to prevent her from sending more letters, but Dickes was skeptical that the "warning" would work. Discovery will reveal more.

The plaintiff's allegations are not conclusory, and the defendants' cited cases are unavailing. In *Mendoza v. United States Immigration and Customs Enforcement*, the conclusory assertions that different entities "cooperated," even though their offices were hundreds of miles apart and had no access to each others' records, were insufficient to state a claim. 849 F.3d 408, 422 (8th Cir. 2017); *see also Wolk*, 107 F.4th at 857, 860. In *Kelly v. City of Omaha*, the complaint did not state a claim for conspiracy because the "only reference to any communication" between the alleged conspirators was an allegation that, "at some unspecified date," the defendant instructed members of his department to deny permits, and the complaint did not contain any facts giving rise to an inference of an improper motive. 813 F.3d 1070, 1078 (8th Cir. 2016).

Based on the complaint, the defendants were not "hundreds of miles apart," and the plaintiff alleged at least two specific and particular communications between them. The facts in the complaint, accepted as true for the present motion to dismiss, suggest the defendants reached some type of agreement to "warn" the plaintiff that further letter-writing would subject her to criminal prosecution. Such a threat would chill a person of ordinary firmness from engaging in protected conduct, and the plaintiff did cease her conduct. The plaintiff has sufficiently pled, at least at this early stage, that the defendants conspired to deprive her of her First Amendment rights. Discovery will give the Court a fuller picture as to what actually happened.

Accordingly,

IT IS ORDERED:

1.    Defendant Joseph Smith's motion to dismiss (filing 8) is denied.

2.    Defendant Kelli Dickes' motion to dismiss (filing 12) is denied

3.    This case is referred to the magistrate judge for case progression.

Dated this 4th day of March, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

11